Rosalee B. C. Thomas
**FINKELSTEIN THOMPSON LLP**
1077 30th St NW, Suite 150
Washington, D.C. 20007
Tel.: (202) 337-8000
Fax: (202) 337-8090
rbcthomas@finkelsteinthompson.com

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SYLVIA VOLIN, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY,<br><br>     Defendant. | CIV. No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Sylvia Volin, individually on behalf of herself and all others similarly situated, brings this Class Action Complaint against Defendant General Electric Company ("GE" or "Defendant") and in support alleges as follows:

**THE PARTIES**

1.      Plaintiff Sylvia Volin is a resident of the State of New Jersey, residing at 34 Willow Lane, Tenafly, New Jersey.  On or about January 30, 2013, Ms. Volin purchased one of the GE-branded 30" Free Standing Gas Range oven, model number JGB600EEDES, which was[1]

---

[1] GE no longer manufactures the 30" Free Standing Gas Range oven, model number JGB600EEDES.
http://products.geappliances.com/ApplProducts/Dispatcher?REQUEST=SpecPage&Sku=JGB600EEDES.  However, the model may still be available from New Jersey retailers who have not yet

designed, manufactured, warranted, marketed, advertised, and sold by Defendant ("Defective Gas Range"), for $1087.00, from Oberg & Lindquist of Westwood, New Jersey.

2.      Defendant General Electric Company is a New York corporation with its principal place of business at 3135 Easton Turnpike, Fairfield, Connecticut 06828. At all times relevant hereto, Defendant GE has conducted business in New Jersey.

3.      GE is one of the largest technology, media, and financial services companies in the world.  GE's Industrial Division produces and sells a variety of technological products, including consumer appliances – and in particular, gas range ovens. GE is in the business of manufacturing, producing, distributing, and/or selling gas ranges throughout the United States.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332(d) because this action is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, the amount in controversy exceeds $5,000,000, and there are members of the Class who are citizens of a different state than the Defendants.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action occurred, or a substantial part of the property that is the subject of this action is situated, in this District. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because GE is a corporation and subject to personal jurisdiction here because it sells, markets, and warrants gas range ovens within the District.

## INTRODUCTION

6.      This action is brought to remedy violations of law in connection with defects in a popular GE-branded 30" Free Standing Gas Range oven, model number JGB600EEDES, which

---

sold out of their stock.  *E.g.* http://www.derbyappliances.com/products/General-Electric/ge/jgb600eedes.html (consumers are able to request a quote on the JGB600EEDES).

2

was[2] designed, manufactured, warranted, marketed, advertised, and sold by Defendant. In particular, the surface knobs on the Defective Gas Range are prone to, and do, rotate as a result of minor, inadvertent bumps or jostling ("Surface Knob Defect"). When the knobs are inadvertently jostled, the burner valve on the Defective Gas Range opens, releasing flammable gas. The Defective Gas Range utilizes an ignition system that, when properly functioning, ignites the released gas. Thus, when the knobs are inadvertently bumped and the ignition system engages, the Defective Gas Range emits a flame that consumers, like Plaintiff, do not intend to have emitted.

7.      All GE-branded 30" Free Standing Gas Range ovens, model number JGB600EEDES, contain this Surface Knob Defect.

8.      In addition to the Surface Knob Defect, the ignition system on the Defective Gas Range often fails to properly and timely ignite the released gas ("Ignition System Defect"). As a result, the Defective Gas Range emits a continuous and accumulating stream of flammable gas.

9.      All GE-branded 30" Free Standing Gas Range ovens, model number JGB600EEDES, contain this Ignition System Defect.

10.     Both the Surface Knob Defect and the Ignition System Defect (together, the "Defects") compromise the normal operation of the unit, release a noxious and unpleasant odor, and create a constant and unreasonable risk of danger to the consumer. The Defects make the Defective Gas Range unsuitable for its intended use, and unable to operate as sold or intended.

---

[2] GE no longer manufactures the 30" Free Standing Gas Range oven, model number JGB600EEDES. http://products.geappliances.com/ApplProducts/Dispatcher?REQUEST=SpecPage&Sku=JGB600EEDES. However, the model may still be available from New Jersey retailers who have not yet sold out of their stock. *E.g.* http://www.derbyappliances.com/products/General-Electric/ge/jgb600eedes.html (consumers are able to request a quote on the JGB600EEDES).

The Defects create dangerous, volatile conditions for consumers, who are exposed to inadvertent fire ignition, unattended and uncontrolled gas fumes, or both.

11.     The Defects cause consequential, anticipated economic losses to consumers. Plaintiff and the Class purchased and spent money for a lesser-valued Defective Gas Range, with Defects that had not been properly investigated and assessed for safety, risks, and benefits; and the Plaintiff and the Class received the Defective Gas Range that was not effective and/or safe for conditions and circumstances for which the gas range was promoted in the marketplace. The Defective Gas Range's inferiorities that Plaintiff and the Class received, as compared to what they were entitled to receive and reasonably expected to receive, are ascertainable losses. Plaintiff and the Class received the Defective Gas Range that was different from and inferior to what they were entitled to receive as a direct result of Defendant's unlawful deceptive conduct. Plaintiff and the Class have also incurred additional costs to repair, replace, and/or address the Defects of, the Defective Gas Range, and/or losses and damages from the Defective Gas Range including property damage. Plaintiff and the Class are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees, and costs of suit.

12.     GE has failed to provide a good faith or effective repair in response to consumer complaints regarding the Defects, or to replace the Defective Gas Range with a comparable, non-defective model.

13.     On behalf of the class defined below, Plaintiff seeks, among other relief, damages in the form of restitution or disgorgement, and injunctive relief to prevent any further unlawful conduct and misrepresentations by Defendant.

## FACTUAL BACKGROUND

**1.     The Defective Gas Range**

      A.     <u>Surface Knob Defect</u>

14.     The Defective Gas Range has four (4) surface knobs, located in the front of the range, each of which can be turned to the "Lite" position.

15.     When a knob is turned to the "Lite" position, (and assuming the Defective Gas Range is otherwise functioning properly), the burner associated with that knob will emit a flame.

16.     However, the surface knobs are prone to, and do, rotate as a result of minor, inadvertent bumps or jostling.  As a result, the surface knobs can turn to the "Lite" position as a result of slight, inadvertent contact with either the knobs or the Defective Gas Range itself.

      B.     <u>Ignition System Defect</u>

17.     Turning a surface knob on the Defective Gas Range to the "Lite" position opens a burner valve associated with that knob, and allows flammable gas to flow through a burner tube. The gas is directed to a venturi, where it is combined with air to create the proper mixture necessary for combustion.

18.      Turning a surface knob also causes a spark switch to close, which sends 120 volts of alternating current to the spark module and, in turn, sends high voltage pulses to all of the electrodes.  The pulses cause a spark to occur between the electrode and the grounded burner cap.   That spark ignites the gas and air mixture at the burner head, producing a blue flame with an occasional yellow tip.

19.     This type of ignition system is commonly referred to as "self-proving" because the opening of the gas valve and the generation of sufficient heat are "proved" by the ignition of a flame.

20.     However, the ignition system on the Defective Gas Range does not operate properly, often resulting in a failed ignition.  Moreover, the ignition system on the Defective Gas Range does not contain a failsafe or redundancy that will stop the flow of gas in the event that ignition fails, or in the event that the burner valve is opened as a result of inadvertent contact with the surface knob on the Defective Gas Range.

21.     Absent ignition, gas continues to flow from the Defective Gas Range, causing an excess of flammable gas to accumulate.  The accumulation of gas is noxious and unpleasant.  In addition, the accumulation of flammable gas, when combined with oxygen-rich room air, creates a highly combustible fuel mixture and dramatically increases the potential for explosion and/or fire.

22.     Beginning in the early 1990s, Defendant had or should have had knowledge of the reports and data demonstrating that gas ovens with "self-proving" systems were prone to hazardous flare-ups and explosions. This propensity was investigated by the United States Consumer Products Safety Commission ("CPSC") and resulted in the publication of a report on July 15, 2002 entitled *Gas Range Delayed Ignitions*.  The report concluded, *inter alia*, that marketed "hot surface igniters" and gas valves create a system that "is not failsafe and the presence of gas at the burner was not proved." Moreover, such appliances "have no means to detect and react to the release or accumulation of non-combusted gases."

23.     On or about October 25, 2011, the CPSC and Health Canada (Canada's federal department responsible for helping Canadians maintain and improve their health), in cooperation with GE, conducted a voluntary recall of 470 units of GE Monogram® Pro Rangetop with Grill, a gas rangetop, based on reports that "[b]urners on Rangetops operating on liquefied petroleum ("LP" or propane) may fail to ignite or light if the gas control knob is left in a position between

OFF and LITE, posing a risk of delayed ignition or explosion." These ovens resulted in at least six reports involving explosions in consumers' units.

24.     The Defective Gas Range was not similarly recalled.

C.     Sale of Defective Gas Range

25.     GE manufactured, produced, and/or distributed the Defective Gas Ranges for sale by GE's network of authorized dealers in the United States, such as Best Buy, Sears, and other large and medium-sized retail chains, as well as through independently-owned retailers, such as Oberg & Lindquist.

26.     The Defective Gas Ranges are or were sold as GE products, branded with the "General Electric" name and "GE" logo. GE markets the Defective Gas Ranges under names such as "Free Standing" or "Profile."

27.     The Defective Gas Range sell or were sold for a retail price of approximately $875 to $1200.

28.     There are no differences among the Defective Gas Ranges that relate to, arise from, or are relevant to the cause of the Defects. The Defective Gas Range's relevant design, parts, pieces, operation and materials are the same. Plaintiff is informed and believes that the gas ranges are and were manufactured in the same facilities in Louisville, Kentucky and/or Leiser, Mexico.

29.     GE did not disclose (and does not disclose) either prior to or at the time of purchase any information to Plaintiff or Class members regarding the Surface Knob or Ignition System Defects.

D.     Defendant's Response

30.    GE has failed or refused to implement a solution that prevents the Defective Gas Range's surface knobs from rotating and releasing flammable gas as a result of minor, inadvertent bumps or jostlings.

31.    GE has also failed or refused to repair the Defective Gas Range so that the self-proving ignition system properly and timely prompts the ignition spark in cases of inadvertent surface knob turns.

32.    GE refuses to replace the Defective Gas Range with a comparable, non-defective model.

33.    Defendants knew, or should have known, that there are several mechanisms that Defendants could use to shut off gas flow when a flame is undetected.

34.    For example, a number of United States Patents have been granted, dating back as far as 1974, addressing the concerns of fuel buildup in gas ovens/ranges with hot surface ignition systems:

- In 1974, US Patent 3832123 designed a "fail safe" improvement that shuts off gas flow when a flame is not detected after a predetermined amount of time.

- In 1988, US Patent 4765536 noted that ovens that use a pilot light system include flame sensors that only allow the flow of gas in the presence of a flame.

- In 2000, US Patent 6164958 was a safety system comprised of a gas supply valve, a gas flow sensor, a gas leak warning circuit, a no-flame warning circuit and a gas supply valve controller.

- In 2003, US Patent 6634351 addresses multiple patents that include a shutoff that senses flame ignition and stops gas flow in the absence of flame.

- In 2004, US Patent 6830045 was issued to Maytag Corporation and was a system designed to reduce buildups.

- In 2006, US Patent 7044729 included a safety valve and flame detection circuit to interrupt the flow of gas if not ignited.

- In 1998, US Patent 5791890 used an extra thermocouple near the burner in conjunction with the existing thermocouple to monitor flame ignition, and stops the flow of gas if a flame is not detected. (Notably, GE is or was an assignee of US Patent 5791890).

E.    Plaintiff's Purchase and Use of Defendant's Defective Gas Range

35.    On or about January 30, 2013, Ms. Volin physically analyzed the GE-branded 30 inch Free-Standing Gas Range, model number JGB600EEDES on the showroom floor at Oberg & Linquist of Westwood, New Jersey.

36.    On information and belief, the Oberg & Linquist salesperson, GE's de facto agent, provided Ms. Volin with the same representations and omissions that GE provided to Oberg & Linquist, and which GE also stated in its advertising, marketing, labeling and packaging, and owner's manual regarding the Defective Gas Range.

37.    Based on GE's standardized representations and omissions, Ms. Volin purchased one of the Defective Gas Ranges.

38.    Ms. Volin used the Defective Gas Range in her home as it was intended to be used. Despite Plaintiff's proper and intended use of GE's Defective Gas Range, on numerous occasions, the surface knobs of the Defective Gas Range purchased by Ms. Volin rotated as a result of slight, inadvertent contact, such as brushing up against the surface knob or jostling the appliance.

39.     On some of these occasions, the ignition system failed to ignite the released gas, resulting in a slow, continuous leak of noxious and flammable gas into Plaintiff's home.  For example, on or about September 2013, Plaintiff's Defective Gas Range exhibited the Ignition Switch Defect, at which time it malfunctioned due to the negligent and careless design of the manufacturer. This resulted in a flow of gas from the Defective Gas Range and throughout her home.

40.     On other occasions, the Defective Gas Range exhibited the Surface Knob Defect wherein the ignition system did ignite the unintended released gas, resulting in an unintended burst of flame.  For example, in early 2014, a guest in Plaintiff's home inadvertently brushed against one of the surface knobs, causing a high flame to burst up from the Defective Gas Range.

41.     Plaintiff's Defective Gas Range has exhibited the Ignition Switch Defect and the Surface Knob Defect fairly regularly from September 2013 to at least May 2014, when Plaintiff purchased safety knob covers (see below).

42.     The Defective Gas Range purchased by Plaintiff does not contain a failsafe or redundancy that will stop the flow of gas in the event the spark fails to ignite.  When the gas and air mixture is not ignited by the spark, gas continues to flow, causing a noxious odor and an excess to build up which – when combined with oxygen-rich room air – creates a highly combustible fuel mixture and dramatically increases the potential for explosion and/or fire.

F.      Defendant's Failure to Address Plaintiff's Reported Concerns

43.     Following the incident in or about September 2013, and in light of her concerns regarding the safety issues of GE's Defective Gas Range, Plaintiff reported the hazardous flare-ups and potential explosion associated with GE's Defective Gas Range to a GE representative on the phone.

44.     In particular, on or about September 4, 2013, Plaintiff called the GE Consumer Relations phone number (800-386-1215), and selected Option 1, regarding safety issues. Plaintiff spoke with "Jessica" at extension 5455, who opened case #12971295.  Plaintiff reported the Defects and asked what GE could do to remedy the Defects.  Jessica suggested that a GE service representative visit Plaintiff's home and look at the Defective Gas Range.

45.     On or about September 12, 2013, a GE service representative visited Plaintiff's home and reviewed the Defective Gas Range.  The GE service representative indicated to Plaintiff that nothing could be done to remedy the Defects or their symptoms.  The GE service representative refused to provide Plaintiff with any accommodations and told her that there was nothing further that GE would do.  Instead, GE advised Plaintiff not to lean on the surface knobs of the Defective Gas Range.  Defendant or its authorized representatives did not thereafter contact Plaintiff regarding the subject Defective Gas Range, her complaint, or her request to have the Defects addressed.

46.     On May 21, 2014, after months and months of incidents and concerns, and after it was clear that GE would not provide any remedy or assistance to address the Defects, Plaintiff researched, located, and purchased safety knob covers for the Defective Gas Range costing $8.58.



47.     The safety knob covers are a "band-aid" fix, and a poor replacement for a properly functioning gas range.  The safety knob covers are attached to each surface knob, blocking access to the surface knobs and detracting from the aesthetics of the Defective Gas Range.  In order to operate a surface knob, Plaintiff must unlatch the lid of the safety knob cover. The lid then hangs from the safety knob cover until Plaintiff has finished using the surface knob, at which point Plaintiff must reattach the lid of the safety knob cover.

48.     When the safety knob lid is unlatched and hanging, the oven door of the Defective Gas Range is blocked.  Moreover, when the oven is operating, Plaintiff must keep vigil not to allow the oven door to become ajar, otherwise the heat from the oven will cause the safety knob covers to either become hot or possibly melt.



G.     Defendant Designed a Malfunctioning Gas Range

49.     Defendant, at all times relevant hereto, was in the business of designing, manufacturing, assembling, inspecting, marketing, selling and/or distributing the Defective Gas Range, including the appliance purchased by Plaintiff.

50.     The Defective Gas Range is defective in its design and manufacturing in that (i) the ranges routinely malfunction, causing noxious and unpleasant odors and rendering them ineffective for safe use; and (ii) they present an unreasonable risk, tendency and propensity to

cause harmful gas leaks, explosions and/or fires when properly used by consumers, including Plaintiff and the members of the Class, in the manner in which such appliances are intended to be used.

51.     As a result of the negligence, carelessness and recklessness of Defendant and the dangerous and the defective nature of the Defective Gas Range, reasonable consumers including Plaintiff and the members of the Class routinely endured the Defective Gas Range's malfunctioning.

52.     As a result of the negligence, carelessness and recklessness of Defendant and the dangerous and defective nature of the Defective Gas Range, reasonable consumers, including Plaintiff and the members of the Class, were routinely and repeatedly subjected to unpleasant odors, unjustifiable inconvenience, expense and otherwise incurred damages in an attempt to use and correct the defects the Defective Gas Range including purchasing safety knob covers.

53.     As a result of the negligence, carelessness and recklessness of Defendant, and of the dangerous and defective nature of the Defective Gas Range, reasonable consumers, including Plaintiff and the members of the Class, were subjected to the noxious and unpleasant gas leaks, and the unjustifiable safety risk of gas leaks, explosions and/or fires due to the Surface Knob and Ignition System Defects.

54.     At all times relevant hereto, Defendant knew, and had reason to know, or should have known, that the Defective Gas Range was negligently designed, manufactured, assembled, inspected, marketed, advertised, promoted, sold, and/or distributed in a dangerous and defective condition.  Defendant was fully capable of taking proper remedial action, but failed and/or refused to do so.

55.     At all times relevant hereto, Defendant knew, and had reason to know, or should have known, that the surface knobs and self-proving system on the Defective Gas Range were negligently designed, manufactured, assembled, inspected, marketed, advertised, promoted, sold, and/or distributed in a dangerous and defective condition in that they caused the gas valve to open in such a manner as to cause the oven to release flammable gas, but not ignite. Under circumstances such as opening the oven door, the fuel-rich oven air mixes with the oxygen-rich room air, and can trigger an explosion and/or fire. Defendant was fully capable of taking proper remedial action, but failed and/or refused to do so.

56.     At all times relevant hereto, Defendant knew, and had reason to know, or should have known, that the Defective Gas Range was negligently designed, manufactured, assembled, inspected, marketed, advertised, promoted, sold, and/or distributed in a dangerous and defective condition in that it possessed hidden and/or concealed defects with respect to: (1) the surface knobs being prone to rotate and, in fact, rotating and releasing flammable gas as a result of minor, inadvertent bumps or jostling, and (2) the self-proving system not properly and timely operating the "ignition" function in the event that the surface knobs inadvertently turn on to the "Lite" position.  Each defect created the risk, tendency and propensity of the Defective Gas Range to suddenly and without warning become ineffective for safe use, and/or explode and/or cause fire at any given time.  These defects were not reasonably known or knowable to Plaintiff and the members of the Class.

57.     At all times relevant hereto, Defendant was fully aware of the defective condition of the Defective Gas Range, and was fully capable of taking proper remedial action to correct them, but wrongfully failed and refused to do so in order to save itself the substantial cost and expense involved, all to the detriment, damage and loss to Plaintiff and the members of the

Class, and at the inexcusable and unjustifiable risk of exposing Plaintiff and the members of the Class to the risk of serious and perilous safety hazards and damage to property.

58.     Upon complaining to GE about the Defective Gas Range, consumers are denied a good faith or effective repair.  GE fails to make repairs that it knows will cause the Defective Gas Range to perform safely and with the quality it represents.  GE has not implemented a solution that prevents the Defective Gas Range's surface knobs from rotating and releasing flammable gas as a result of minor, inadvertent bumps or jostlings; nor did GE develop a fix to the Defective Gas Range's self-proving system to properly and timely prompt the "ignition" spark in cases of inadvertent surface knob turns.  GE has refused repairs or replacement.

59.     Defendant has known, or reasonably should have known, that the Defective Gas Range is defective.

60.     Defendant has ignored and concealed the nature and severity of the Surface Knob and Ignition System Defects from consumers, including Plaintiff and Class Members.

H.     Defendant's Misrepresentations and Omissions

61.     At all times relevant hereto, Defendant failed to warn of the dangers of the Defective Gas Range, including that the Defective Gas Range routinely malfunctioned, rendering them ineffective for safe use; and presented an unreasonable risk, tendency and propensity to cause explosion and/or fire when properly used by consumers, in the manner in which they are intended to be used, including by Plaintiff and the members of the Class.

62.     At all times relevant hereto, Defendant misrepresented the safety of the Defective Gas Range and negligently designed, manufactured, assembled, inspected, marketed, advertised, promoted, sold, and/or distributed the Defective Gas Range as safe, despite the fact that such appliances routinely malfunctioned, rendering them ineffective for safe use; and presented an

unreasonable risk, tendency and propensity to cause explosion and/or fire when properly used by consumers, in the manner in which they were intended to be used, including by Plaintiff and the members of the Class.

63.     At all times relevant hereto, Defendant fraudulently concealed from Plaintiff and the members of the Class dangerous defects in the Defective Gas Range that caused it to routinely malfunction, rendering them ineffective for safe use.

64.     At all times relevant hereto, Defendant knew about the hidden Defects and/or concealed the Defects in the Defective Gas Range generally, and with respect to the igniter mechanism specifically. The Defects are reflected in data and reports maintained by Defendant and other reports, technical service bulletins, documents and memoranda within the possession of Defendant. The Defects were not reasonably known or knowable by Plaintiff, and Defendant never disclosed the Defects to Plaintiff or Class Members.

65.     Defendant designed, manufactured, assembled, inspected, marketed, advertised, promoted, sold, and/or distributed the Defective Gas Range as safe, despite its exclusive possession of knowledge of the defects in the Defective Gas Range generally, and with respect to the igniter mechanism specifically.

66.     Prior to Plaintiff's use of the Defective Gas Range, Defendant, in order to promote and induce the purchase of their product, represented to the general public and to the Plaintiff, through the internet, by advertisement literature, through sales representatives, owner's manual and other means that consumers could use the product for the purpose for which the product was intended.

67.     For example, the Defective Gas Range's owner's manual instructs the user to "Push the control knob in and turn it to the *LITE* position" in order light the surface burner.  GE

fails to disclose to consumers, at the time of purchase or otherwise, the material fact that the Defective Gas Range is defective because the surface knob need not be pushed in to light the surface burner; rather, the surface knob would light the surface burner if there is a minor, inadvertent bump or jostling of the knob of the appliance.

68.     Furthermore, the Defective Gas Range's owner's manual states, "When one burner is turned to *LITE,* all the burners spark."  GE fails to disclose to consumers, at the time of purchase or otherwise, the material fact that the Defective Gas Range's "self-proving system" fails to properly and timely spark "ignition" function when the surface knob gets inadvertently turned on, resulting in unsafe gas fumes being emitted from the Defective Gas Range.  The omissions are misleading.

69.     GE was obliged to disclose the material facts that the surface knobs and "self-proving" system are defective, and that it had offered no solution to make the Defective Gas Range perform as represented because: (a) Defendant had exclusive superior knowledge of the material facts not known to Plaintiff and Class members, because only Defendant had access to the aggregate data from its retailers, its own tests of knobs and self-proving systems, and complaints from its customers; and (b) Defendant actively concealed and suppressed the material facts from Plaintiff by not warning of the defects in the Defective Gas Range at the time of purchase, and by performing warranty and/or repair work that it knew would not cure the defects.

70.     GE had gone to significant efforts to promote its Defective Gas Range, and touted the appliance and operation as a material characteristic, use and benefit.

71.     At the time of the sale and as a part thereof, and as inducement to Plaintiff and members of the Class to acquire the Defective Gas Range, Defendant itself and through its

representatives represented and/or promised that the Defective Gas Range possessed certain safety features, namely those that would mitigate the propensity to cause flare-ups, explosions and/or fire. *See* ¶67, *supra*.

72.     Plaintiff and members of the Class purchased or obtained the Defective Gas Range in reliance on the represented/promised safety features in its manual and other marketing materials (*e.g.*, the surface knob needs to be turned in to avoid unintentional release of gas), namely those that would mitigate the propensity to cause flare-ups, explosions and/or fire (as well as the professed integrity of Defendant GE).

73.     The Defective Gas Range does not perform the function for which it was intended and is not merchantable, and is not fit for its ordinary and intended purpose.  GE has not been able to conform the Defective Gas Range to its express and implied warranties.

74.     The defects were the direct, proximate, and foreseeable cause of damages incurred by Plaintiff and members of the Class.

75.     Had the Defective Gas Range been properly manufactured and/or free from design defects, Plaintiff and the members of the Class would not have suffered the damages complained of herein.

## CLASS ACTION ALLEGATIONS

76.     Plaintiff brings this action on behalf of herself and the members of a "Class" comprised of:

> All persons residing in the State of New Jersey who purchased a 30" Free Standing Gas Range oven, model number JGB600EEDES, and to whom GE has not paid a full refund of their purchase price, excluding taxes and installation costs. Excluded from the Class is any entity in which GE has a controlling interest or which has a controlling interest in GE, and GE's legal representatives, assigns, and successors. Also excluded are the judge assigned to this case and any member of the judge's immediate family and staff.

77.     Members of the Class are so numerous that joinder is impracticable. While the exact number of Class members is unknown to Plaintiff, it is believed that the Class is comprised of hundreds of members geographically disbursed throughout the State of New Jersey. The Class, however, is readily identifiable from information and records in the possession of GE.

78.     Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual Class members because Defendant has acted on grounds generally applicable to the Class.  Such common legal or factual questions include:

(a)     Whether the Defective Gas Range is defective;

(b)     Whether the Defective Gas Range is defectively designed and/or manufactured;

(c)     Whether the defects in the Defective Gas Range resulted from Defendant's negligence;

(d)     Whether Defendant knew or reasonably should have known about the defects prior to distributing the Defective Gas Range to Plaintiff and the Class;

(e)     Whether Defendant concealed from and/or failed to disclose to Plaintiff and the Class the problems with its Defective Gas Range;

(f)     Whether Defendant knew or reasonably should have known about the defects after distributing the Defective Gas Range to Plaintiff and the Class;

(g)     Whether Defendant breached express warranties relating to its Defective Gas Range;

(h)     Whether Defendant breached the implied warranty of merchantability relating to its Defective Gas Range;

(i)      Whether Defendant was unjustly enriched by receiving monies in exchange for the Defective Gas Range;

(j)      Whether Defendant should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of the Defective Gas Range;

(k)      Whether Plaintiff and the Class are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(l)      Whether Defendant should be enjoined from selling and marketing its Defective Gas Range; and

(m)      Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing its Defective Gas Range.

79.     Plaintiff's claims are typical of the members of the Class as all members of the Class are similarly affected by Defendant's actionable conduct.  Plaintiff and all members of the Class purchased one or more Defective Gas Ranges. In addition, Defendant's conduct that gave rise to the claims of Plaintiff and members of the Class (*i.e.* designing and manufacturing the Defective Gas Range, concealing the defect, and breaching warranties respecting the Defective Gas Range) is the same for all members of the Class.

80.     Plaintiff will fairly and adequately protect the interests of the Class because Plaintiff has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation.

81.     Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum

simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

82.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

83.     Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATION

84.     On information and belief, Defendant was, or should have been aware, at least as early as 2012, that the Defective Gas Range was defective in that (1) the surface knobs on the Defective Gas Range are prone to, and do, rotate and release flammable gas as a result of minor, inadvertent bumps or jostling, quickly opening up the burner valve and releasing gas, and (2) the Defective Gas Range contains no fail-safes, or inadequate fail-safes, to interrupt and/or halt the flow of gas in the absence of combustion.

85.     Although Defendant was aware of the Defects, Defendant took no steps to warn Plaintiff or the members of the Class regarding such Defects or the dangers that those Defects would pose. Defendant continued to sell the Defective Gas Range to Plaintiff and the members of the Class.

86.     The Defects in the design and/or manufacture of the Defective Gas Range were not detectible to Plaintiff and members of the Class.

87.     Defendant actively concealed the existence of the Defects and/or failed to inform members of the Class of the existence of the Defects. As a result of Defendant's active concealment of the Defects and/or failure to inform Plaintiff and members of the Class of the Defects, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.  Furthermore, Defendant is estopped from relying on any statutes of limitation in light of their concealment of the defective nature of its gas ranges.

## COUNT I
## Violations of the New Jersey Consumer Fraud Act
## N.J. STAT. ANN. § 56:8-1 *et seq.*

88.     Plaintiff re-alleges and incorporates each and every factual allegation as if fully written herein.

89.     Plaintiff and the members of the Class are "consumers" within the meaning of the New Jersey Consumer Fraud Act, N.J. Stat. Ann., § 56:8-1 *et seq.* ("CFA").

90.     The Defective Gas Ranges are "goods" within the meaning of the CFA.

91.     At all relevant times material hereto, GE conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

92.     The CFA is, by its terms, a cumulative remedy, such that remedies under CFA's provisions can be awarded in addition to those remedies provided pursuant to other sources of law.

93.     GE has engaged in deceptive, unconscionable, unfair, fraudulent and misleading commercial practices in the marketing and sale of the Defective Gas Range that GE knew to be defective.

94.     GE had exclusive knowledge of the Defects at the time of sale.  The Defects are latent and not something that Plaintiff or members of the Class could have discovered, in the exercise of reasonable diligence, independently prior to purchase.

95.     GE represented that its Defective Gas Ranges had characteristics, uses, or benefits, that they did not have, and that its Defective Gas Ranges were of a particular standard, quality or grade that they were not.

96.     In its marketing and sale of the Defective Gas Ranges, GE undertook active and ongoing steps to conceal the Defects and has consciously withheld material facts from Plaintiff and other members of the Class with respect to the Defects in the Defective Gas Ranges. Plaintiff is aware of nothing in GE's advertising, publicity, or marketing materials that discloses the truth about the Defects, despite GE's awareness, or reckless lack of awareness, of the problem.

97.     GE's conduct was objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances. Defects exist in the Defective Gas Range in that (1) the knobs are prone to, and do, rotate and release flammable gas as a result of minor, inadvertent bumps or jostling, and (2) the self-proving ignition system does not properly and timely ignite gas released by the inadvertent turning of the knobs.  The fact of these Defects is a material fact to which a reasonable consumer would attach importance at the time of purchase. The fact of these Defects would influence a reasonable consumer's choice of action during the purchase of an appliance such the Defective Gas Range.

98.     GE intended that Plaintiff and the members of the Class rely on Defendant's acts of concealment and omissions by purchasing a Defective Gas Range at full price for a lesser-valued Defective Gas Range, and in return received a gas range that failed to adequately operate as sold; and the Plaintiff and the Class received the Defective Gas Range that was not effective

and/or safe for conditions and circumstances for which the gas range was promoted in the marketplace. Plaintiff and the Class have also incurred additional costs to repair and/or replace the Defective Gas Range, and/or losses and damages from the Defective Gas Range including property damage.

99.     Had GE disclosed the material information regarding the Defects to Plaintiff and the members of the Class, Plaintiff and the members of the Class would not have purchased the Defective Gas Range, or they would have paid less for it.

100.     As a result of the foregoing acts, omissions, and practices, Plaintiff and the members of the Class have suffered an ascertainable loss by purchasing defective gas ranges that do not function properly and/or as intended, and that present a risk to the safety of Plaintiff and the members of the Class.

101.     Plaintiff is entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees, and costs of suit.

102.     Application of the CFA to all Class members, regardless of their state of residence, is appropriate as described herein and because, *inter alia*, the facts and circumstances of this case reflect numerous contacts with the State of New Jersey so as to create a state interest in applying the CFA to GE, thereby making application of New Jersey law to the entire Class appropriate.

**COUNT II**
**Breach of Implied Warranties**

103.     Plaintiff re-alleges and incorporates each and every factual allegation as if fully written herein.

104.     GE sold and promoted the Defective Gas Ranges, which it placed into the stream of commerce. Defendant knew or had reason to know of the specific use for which the Defective

Gas Range was purchased, and it impliedly warranted that the Defective Gas Ranges were of merchantable quality and fit for such use.

105.    Plaintiff and Class members reasonably relied upon the expertise, skill, judgment, and knowledge of Defendant GE and upon its implied warranty that the Defective Gas Ranges were of merchantable quality and fir for such use.

106.    Through the conduct alleged herein, GE has breached the implied warranty of fitness for a particular purpose.

107.    The Defective Gas Ranges were not fit for the particular purpose for which they were purchased by Class Members to perform.  The Class Members purchased the Defective Gas Ranges for a particular purpose of being able to safely cook on the gas range without inadvertently turning the surface knobs or the self-proving system timely and properly preventing the gas valve from emitting gas without a spark ignition.  GE knew that the Class Members were purchasing the Defective Gas Ranges for this purpose and marketed the products for this particular purpose.

108.    Plaintiff and Class Members relied on Defendant's misrepresentations by purchasing the Defective Gas Ranges.

109.    Defendant knew or had reason to know that Plaintiffs and Class Members were influenced to purchase the Defective Gas Range through Defendant's expertise, skill, judgment and knowledge in furnishing the products for their intended use.

110.    The Defective Gas Ranges were not of merchantable quality and were not fit for their particular intended use because the design and/or manufacturing defects alleged herein render them incapable of preventing inadvertent turning of the surface knobs or self-proving system timely and properly preventing the gas valve from emitting gas without a spark ignition.

111.    Defendant's actions, as complained of herein, breached their implied warranty that the Defective Gas Ranges were of merchantable quality as fit for such use, in violation of the Uniform Commercial Code (UCC § 2-314 and § 2-3154) and the common law of this State, as well as the common law and statutory laws of the other states.

112.    Plaintiff and the Class Members have incurred damage as described herein as a direct and proximate result of the failure of Defendant to honor its implied warranty.   In particular, Plaintiff and Class Members would not have purchased the Defective Gas Ranges had they known the truth about the Defects; nor would they have suffered the collateral effects and damages associated with these Defects.

### COUNT III
### Breach of Express Warranty Under the Uniform Commercial Code—Sales
### N.J. STAT. ANN. § 12A2-101, *et seq.*

113.    Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

114.    Defendant GE expressly warranted via its user manuals that the Defective Gas Range is free from defects in material and workmanship and fit for the ordinary purpose for which such goods are used.

115.    Defendant, in order to promote and induce the purchase of their product, represented to the general public and to the Plaintiff, through the internet, by advertisement literature, through sales representatives, owner's manual and other means that consumers could safely use the product for the purpose of cooking which was in fact the purpose for which the product was intended.

116.    The Defective Gas Range's owner's manual instructs the user to "Push the control knob in and turn it to the *LITE* position" in order light the surface burner.  GE fails to disclose to

consumers, at the time of purchase or otherwise, the material fact that the Defective Gas Range is defective because the surface knob need not be pushed in to light the surface burner; rather, the surface knob would light the surface burner if there is a minor, inadvertent bump or jostling of the knob of the appliance.

117.    GE also expressly warranted in its user manuals that it would also provide, free of charge, all labor and in-home service to replace the defective part of its Defective Gas Range that failed due to a defect in materials or workmanship within one year from the date of original purchase.

118.    GE's express warranties were part of the basis of the bargain between GE and Plaintiff and members of the Class.

119.    The Defective Gas Range was defective in that it was incapable of preventing inadvertent turning of the surface knobs and because the self-proving ignition system failed to timely and properly ignite the released gas.

120.    GE also breached its express warranty by refusing to repair the Defective Gas Range and/or replace the Defective Gas Range's parts damaged by the defects.

121.    Plaintiff and members of the Class relied upon the representation and/or warranty that they would be supplied a gas range free of defects.

122.    Plaintiff and members of the Class notified GE of the breach.

123.    Plaintiff has given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and Defendant failed to do so.

124.    Defendant has failed to provide Plaintiff or the Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that Defective Gas Range expressly warranted when it sold the gas ranges to Plaintiffs and the Class.

125.    Plaintiff and members of the Class sustained injuries and damages as a result of the breach.

## COUNT IV
## The Magnuson-Moss Warranty Act
## 15 U.S.C. § 2301 *et seq.*

126.    Plaintiff re-alleges and incorporates each and every factual allegation as if fully written herein.

127.    The Defective Gas Range is a "consumer product" within the meaning of 15 U.S.C. § 2301.

128.    Plaintiff and members of the Class are "consumers" within the meaning of 15 U.S.C. § 2301.

129.    Defendant is a "supplier" or "warrantor" of the consumer products to consumers and "warrantor" within the meaning of 15 U.S.C. § 2301.

130.    GE made written and implied warranties regarding its Defective Gas Range to Plaintiff and members of the Class within the meaning of 15 U.S.C. § 2301.

131.    GE violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* by failing to comply with the written and implied warranties Defendant made to Plaintiff and members of the Class.

132.    GE violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* by failing to comply with the implied warranties Defendant made to Plaintiff and members of the Class.  GE failed to repair or replace the Defective Gas Range under the written warranties and implied warranties, therefore breaching its warranties.

133.    Plaintiff and members of the Class sustained injuries and damages as a result of Defendant's violation of their written and/or implied warranties.

## COUNT V
## Unjust Enrichment

134.    Plaintiff re-alleges and incorporates each and every factual allegation as if fully written herein.

135.    Plaintiff and members of the Class conferred a benefit upon Defendant.  Namely, Plaintiff and members of the Class paid money to Defendant for ownership of the Defective Gas Range.  Defendant retained that benefit.

136.    Defendant, however, retained that benefit under circumstances that make it inequitable for Defendant to retain such benefit without paying the value thereof. Specifically, Defendant retained that benefit despite the fact that the Defective Gas Range was defective.

137.    Plaintiff, and the putative Class, are therefore entitled to disgorgement/restitution.

## COUNT VI
## New Jersey Products Liability Act
## N.J. Stat. Ann. § 2A:58C-1 et seq.,

138.    Plaintiff re-allege each and every factual allegation as if fully written herein.  This count is pleaded in the alternative to Count I and any other count the New Jersey Products Liability Act could preempt.

139.    Defendant is the researcher, developer, manufacturer, distributor, marketer, promoter, supplier and seller of the Defective Gas Ranges, which is defective and unreasonably dangerous to consumers.

140.    The Defective Gas Ranges are defective in design or formulation in that it is not reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

141.    The defective condition of the Defective Gas Ranges render them unreasonably dangerous, and they were in this defective condition at the time it left the hands of the

Defendant. The Defective Gas Ranges were expected to and did reach consumers, including Plaintiff, without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

142.    The Defective Gas Ranges were unreasonably dangerous in that it was more dangerous than would be reasonably contemplated by the ordinary user. During the period that Plaintiff was using her Defective Gas Range, she was using it in a manner that was intended by Defendant. At the time Plaintiff received and used her Defective Gas Range, it was represented to be safe and free from latent defects.

143.    At the time of Plaintiff's purchase, the Defective Gas Ranges were defective and unreasonably dangerous to foreseeable consumers and users, including Plaintiff, and the putative class.

144.    Defendant is strictly liable to Plaintiff for designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of Defendant because of the design defects.

145.    Defendant knew or should have known of the danger associated with the use of the Defective Gas Ranges, as well as the defective nature of same, but has continued to design, manufacture, sell, distribute, market, promote and/or supply the Defective Gas Ranges so as to maximize sales and profits at the expense of the public safety, in conscious disregard of the foreseeable harm caused by them.

146.    Moreover, as described above, there existed technologically feasible and practical alternative designs that would have reduced or prevented the risks outlined herein.

147.    As a proximate result of the Defendant's design, manufacture, marketing, sale, and distribution of the Defective Gas Ranges, Plaintiff has suffered economic harm, and the risk attendant to a build-up of gas and/or unintended fire.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully request that this Court:

A.    Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Award damages, including compensatory, exemplary, and/or statutory damages, to Plaintiff and the Class in an amount to be determined at trial;

C.    Grant restitution or rescission to Plaintiff and the Class and require Defendant to disgorge its ill-gotten gains;

D.    Permanently enjoin Defendant from engaging in the wrongful and unlawful conduct alleged herein;

E.    Award Plaintiff and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

F.    Award Plaintiff and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

G.    Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on all claims so triable.

Date:  June 17, 2015                       s/ Rosalee B.C. Thomas

Rosalee B. C. Thomas

L. Kendall Satterfield

Mila F. Bartos

**FINKELSTEIN THOMPSON LLP**

1077 30th St NW, Suite 150

Washington, D.C. 20007

Tel.: (202) 337-8000

Fax: (202) 337-8090

rbcthomas@finkelsteinthompson.com


*Of Counsel:*

Tracy D. Rezvani

**REZVANI VOLIN P.C.**

1050 Connecticut Ave N.W. 10th Floor

Washington, D.C. 20036

Tel: (202) 350-4270 x102

Fax: (202) 351-0544

trezvani@rezvanivolin.com