UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SYLVIA VOLIN,<br><br>                    Plaintiff,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY,<br><br>                    Defendant. | Civ. No. 15-4111 (KM) (JBC)<br><br>OPINION |

**MCNULTY, U.S.D.J.:**

    The plaintiff, Sylvia Volin, brings this putative class action against the defendant, General Electric Company ("GE"), for damages relating to the allegedly defective design of gas range ovens. The complaint asserts six causes of action, for violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 et seq.; breach of implied warranties; breach of express warranties under the Uniform Commercial Code, N.J. Stat. Ann. § 12A2-101 et seq.; the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301; unjust enrichment; and the New Jersey Products Liability Act, N.J. Stat. Ann. § 2A:58C-1 et seq.

    Now before the Court is the motion of Defendant GE to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 9) For the reasons set forth below, the motion is granted in part and denied in part.

**BACKGROUND**

    On January 30, 2013, Volin, a resident of Tenafly, New Jersey, purchased a GE-branded 30" Free Standing Gas Range Oven, model number JGB600EEDES ("Gas Range"). (Complaint, Dkt. No. 1 ("Compl.") ¶ 1) Volin

1

bought the Gas Range for $1,087 from Oberg & Lindquist, a GE-authorized dealer, in Westwood, New Jersey. (*Id.* ¶¶ 1, 25)

The Gas Range has four surface knobs located in front, each knob corresponding to one of four burners. (Compl. ¶ 14) Each knob is turned to the "Lite" position to light the burner. (*Id.* ¶ 15) The mechanism for lighting the burner is that flammable gas released through a burner tube reacts with air and an electric spark. (*Id.* ¶¶ 17, 18)

Volin alleges that the knobs have a "Surface Knob Defect" that causes them to turn even when the user is not intentionally trying to light a burner. The knobs allegedly rotate inadvertently, for example when someone brushes against them or the appliance is jostled. (*Id.* ¶¶ 6, 16, 38) When this "Surface Knob Defect" occurs, the burner valve opens, releasing a steady stream of flammable gas. For instance, Volin recounts that in early 2014, a guest in her home brushed against one of the knobs, resulting in a high flame being lit on one of the burners. (*Id.* ¶ 40)

Volin alleges that there is an additional "Ignition System Defect." Sometimes the ignition system fails to ignite the gas, and there is no failsafe or other means to detect that gas is being emitted but not ignited. (*Id.* ¶¶ 8, 20, 22) The net effect, Volin alleges, is that inadvertent jostling or bumping of the knobs can result in a buildup of flammable gas in one's home, and she alleges that this occurred in September 2013. (*Id.* ¶¶ 20, 39) The gas is noxious, unpleasant, and dangerous. (*Id.* ¶¶ 10, 21)

On September 4, 2013, Volin contacted GE's customer service to report the issue. (Compl. ¶ 43) A service representative visited Volin's home on September 12, 2013. (*Id.* ¶ 45) The representative told Volin that nothing could be done to remedy the defects and warned Volin to avoid leaning on the knobs. (*Id.*) GE did nothing further to address the issues. On May 21, 2014, Volin purchased plastic safety covers for the four knobs. (*Id.* ¶ 46) Those covers, which cost $8.58, prevent the knobs from being rotated unless the cover is unlatched. (*Id.* ¶¶ 46-47) This "band-aid fix," Volin alleges, is unsatisfactory in

that the covers detract from the aesthetics of the range and, when unlatched, hang down and block the proper opening and closing of the oven. (*Id.* ¶¶ 47-48)

Volin alleges that the two alleged defects created a dangerous situation in her home and rendered the Gas Range unsafe. (Compl. ¶ 63) GE, she alleges, possessed data and reports revealing the defects, but chose to conceal them. (*Id.* ¶ 64) In their advertising material, GE allegedly represented that the Gas Ranges could be used for the purpose for which they were intended. (*Id.* ¶ 66) The owner's manual instructed the user to "push the control knob in and turn it to the LITE position" to turn on one of the burners. According to Volin, this was misleading because the manual did not disclose that a burner could also be turned on inadvertently. (*Id.* ¶ 67) The manual also stated that "when one burner is turned to LITE, all the burners spark." Volin alleges that this is misleading because the ignition system (sometimes) fails to ignite the released gas. (*Id.* ¶ 68) Finally, Volin alleges that GE and its authorized dealer representative at Oberg & Lindquist falsely represented that the Gas Range had safety features which would prevent flare-ups, explosions, or fires. (*Id.* ¶ 71)

Volin filed her Complaint on June 17, 2015. (Dkt. No. 1) GE's motion to dismiss the Complaint has been fully briefed by both sides.

**LEGAL STANDARD**

Defendant has moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

**DISCUSSION**

Because the Products Liability Act asserted in Count VI of the Complaint potentially affects other counts, I discuss if first. (Sections A and B, *infra*) I then consider the remaining counts in order. (Sections C–G, *infra*)

### A. New Jersey Products Liability Act (Count VI)

Count VI of the Complaint alleges a claim under the New Jersey Products Liability Act ("PLA"). GE argues that Volin's PLA claim must be dismissed because Volin has failed to allege any cognizable harm caused by the allegedly defective gas range.

"Harm" is defined in the PLA as follows:

> (a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph.

N.J.S.A. 2A:58C-1(b)(2).

The Complaint primarily alleges deficiencies in the product itself, *i.e.*, the Gas Range. Although the Complaint alleges that gas was released into Volin's

4

home, there are no allegations of any physical damage, personal injury, or illness. In her brief, Volin states that she seeks a "permanent resolution" for the defects, the costs for the plastic knob covers, damages for the inconvenience of having a defective gas range, and damages for "pain and suffering." The latter, pain and suffering category is the only one that seems to fit the definition of "harm" under the PLA. The point, however, is moot. The Complaint does not refer to "pain and suffering," and it contains no factual allegations from which such suffering could be inferred.

Accordingly, I will dismiss the PLA claim for failure to allege the requisite statutory element of "harm." This dismissal is without prejudice to the filing of an amended complaint within 30 days.

### B. Subsumed Claims

Counts I, II, and V of the Complaint allege claims under the New Jersey Consumer Fraud Act ("CFA"), breach of implied warranty, and unjust enrichment. GE argues that the PLA subsumes those state-law claims.[1] GE's position is correct as a matter of abstract law, but it does not require the dismissal of any count here.

The PLA "established the sole method to prosecute a product liability action" such that "only a single product liability action remains." *Tirrell v. Navistar Int'l, Inc.*, 591 A.2d 643, 647–48 (N.J. Super. Ct. App. Div. 1991). "The language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007). It "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991).

---

[1] As a matter of law, Count III, breach of express warranty, would not be subsumed. *See* N.J. Stat. Ann. § 2A:58C–1(b)(3) (certain actions subsumed by PLA, "except actions for harm caused by breach of an express warranty"). GE does not assert that the New Jersey PLA subsumes Count IV, under the federal Magnuson-Moss Warranty Act.

5

The PLA subsumes any cause of action "for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J. Stat. Ann. § 2A:58C–1(b)(3). The PLA, however, defines "harm" in a particular way. The PLA's definition of "harm" (quoted above) encompasses resulting harm to property (other than the product itself) as well as harm to the person, including pain and suffering and emotional harm. N.J. Stat. Ann. § 2A:58C-1(b)(2).

The PLA therefore would subsume most claims that a defective product caused harm, but only as "harm" is defined in the PLA. Judge Thompson put it aptly:

> Taken literally, the language of the PLA is broad—so broad in fact, that a literal reading must be discarded. For example, whenever somebody commits a battery with a commercially-made object, the victim suffers "harm caused by a product," but nobody maintains that the PLA has subsumed the tort of battery. It is therefore unsurprising that, when deciding whether or not the PLA has subsumed a particular claim, courts do not simply determine whether or not the victim's injury was literally "caused by a product." Instead, courts tend to look at the essence of the claims and decide whether or not the plaintiff is disguising what would traditionally be considered a products liability claim as an alternative cause of action.

*New Hope Pipe Liners, LLC v. Composites One, LCC*, No. CIV. 09-3222, 2009 WL 4282644, at *2 (D.N.J. Nov. 30, 2009).

Thus a quasi-products liability claim—one that a defective product caused personal injury to the plaintiff, or even consequential damage to the plaintiff's home—would properly be brought only under the PLA. *See generally Sinclair v. Merck & Co., Inc.*, 948 A.2d 587, 596 (N.J. 2008) ("The heart of plaintiffs' case is the potential for harm caused by Merck's drug. It is obviously a product liability claim."); *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 597 n.5 (D.N.J. June 11, 2015); *Schraeder v. Demilec (USA) LLC*, 2013 WL 3654093 (D.N.J. July 12, 2013); *Baily v. Wyeth, Inc.*, 37 A.3d 549, 581 (N.J. Super. Ct. Law Div. 2008). On the other hand, when the "essential

nature" of the claim is not that of a PLA claim, "the plaintiff may maintain a separate cause of action." *New Hope Pipe Liners, supra.*

I find that the non-PLA counts here allege theories and "harm" that do not fall under the PLA. They are not disguised products liability claims. The common theme of those other counts is not that the product caused harm to plaintiff or her property; it is that Volin did not get what she paid for. To that extent, then, Volin's CFA, implied warranty, and unjust enrichment claims would not be subsumed by the PLA.

As the case progresses and the facts underlying the claims become clearer, the scope of the PLA's subsumptive effect may likewise become clearer. At the pleading stage, however, I cannot say that the PLA wholly bars any other count as a matter of law. The motion to dismiss on these grounds is therefore denied.

### C. Consumer Fraud Act (Count I)

Count I of the Complaint asserts that GE has violated the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq. ("CFA") by engaging in deceptive marketing and sales of the Gas Ranges. The Complaint alleges that GE knew that the appliances were defective but concealed and withheld that information from consumers. (Compl. ¶¶ 93, 96) Volin contends that had she known of the defect, she would not have purchased the Gas Range. (*Id.* ¶¶ 98, 99)

"[T]o state a CFA claim, a plaintiff must allege three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007) (internal citations and quotations omitted). Rule 9(b)'s heightened standard for pleading fraud applies to a CFA claim that sounds in fraud. *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

As I have noted in prior decisions, there are three categories of unlawful conduct under the CFA: affirmative acts, knowing omissions, or violations of

regulations promulgated under the Act. *See Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 333 (D.N.J. 2014). Here, Volin alleges that GE knew about, but failed to disclose, the defects in the Gas Ranges. The Complaint asserts that GE misrepresented that the Gas Ranges were safe for use although it knew from investigations and recalls of similar gas ranges that such appliances posed a danger. (Compl. ¶¶ 22, 23) I find such allegations sufficient to plead the first element.

An ascertainable loss under the NJCFA "occurs when a consumer receives less than what was promised." *Union Ink Co., Inc. v. AT & T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002) (citation omitted). This element is satisfied where a plaintiff alleges that she has received a product worth objectively less than she reasonably expected. *Dzielak*, 26 F. Supp. 3d at 335. Such is the allegation here: Volin alleges that she purchased what she thought was a defect-free appliance "at full price" but actually received a "lesser-valued Defective Gas Range." (Compl. ¶ 98) The Complaint therefore sufficiently alleges that Volin received something less than what she reasonably expected, and that is sufficient at the pleading stage to allege an ascertainable loss.

As to causation, Plaintiff alleges that she did not know of the defects prior to purchasing the gas range and that she would not have purchased the appliance, or would have paid a lesser price, had the defects been disclosed to her. Once again, that is sufficient at the pleading stage to allege a causal nexus.

Accordingly, I find that the Complaint sufficiently pleads a CFA claim and deny the motion to dismiss Count I.

### D. Implied Warranty (Count II)

Count II of the Complaint asserts that GE breached the implied warranties of merchantability and fitness because the Gas Ranges, as a result of the two defects, were not fit for their ordinary and intended purpose: safe cooking. (Compl. ¶ 107)

Under the Uniform Commercial Code, adopted by New Jersey, an implied warranty of merchantability is "a warranty that the goods shall be

merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J.S.A. § 12A:2-314(1). One definition of merchantability is that the goods are "fit for the ordinary purposes for which such goods are used." *Id.* §12A:2-314(2)(c). An implied warranty of fitness for a particular purpose is created "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." *Id.* §12A:2-315. "Merchantability requires that a product conform to its ordinary and intended use." *Hughes v. Panasonic*, Civ. No. 10–846, 2011 WL 2976839, at *22 (D.N.J. July 21, 2011) (internal citations and quotations omitted). The warranty of merchantability "simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold." *Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69, 76 (N.J. 1960). Thus, in many instances, there is not a great distinction between the warranty of merchantability and of fitness for a particular purpose. *Id.*

  A product may be unfit for its ordinary purpose where there are manufacturing defects, design defects, or inadequate instructions for use. *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 542 (D.N.J. 2011). This Complaint alleges all three. Moreover, Volin alleges that GE knew that she and other customers were purchasing the Gas Ranges for the purpose of safe cooking. The Surface Knob Defect and the Ignition System Defect, the Complaint alleges, rendered the Gas Ranges dangerous and thus unfit for their intended purpose.

  Accordingly, I find that the Complaint sufficiently alleges a breach of the implied warranties of merchantability and fitness. The motion to dismiss Count II is denied.

### E. Express Warranty (Count III)

Count III of the Complaint asserts a claim of breach of express warranties. Under New Jersey law, such a claim has three elements: "(1) that Defendant made an affirmation, promise or description about the product; (2)

that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011).

The New Jersey version of the UCC, N.J. Stat. Ann. § 12A:2–313(1), defines an "express warranty" as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"A statement can amount to a warranty, even if unintended to be such by the seller, 'if it could fairly be understood ... to constitute an affirmation or representation that the [product] possesse[s] a certain quality or capacity relating to future performance.'" *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 570 (7th Cir. 1993) (applying New Jersey law and quoting *Gladden v. Cadillac Motor Car Div., General Motors Corp.*, 416 A.2d 394, 396 (1980)). "[W]hether a given statement constitutes an express warranty is normally a question of fact for the jury." *Snyder*, 792 F. Supp. 2d at 721–22.

"Under New Jersey law, a representation is presumed to be part of the basis of the bargain 'once the buyer has become aware of the affirmation of fact or promise' and can be rebutted by 'clear affirmative proof that the buyer knew that the affirmation of fact or promise was untrue.'" *Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462, 469 (D.N.J. 2007) (quoting *Liberty Lincoln–Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 825 (3d Cir. 1999) (internal quotation omitted)).

Volin's Complaint alleges two express warranties. I find the first inadequate to state a claim, but will permit the second.

First, Volin alleges that GA advertisements and statements in the owner's manual expressly warranted that the Gas Range would be free from defects and

would be fit for its intended use. (Compl. ¶¶ 114–16) No such statement is quoted. Rather, the Complaint alleges generally that GE "represented to the general public and to the Plaintiff, through the internet, by advertisement literature, through sales representatives, owner's manual and other means that consumers could safely use the product for the purpose of cooking." (*Id.* ¶ 115) The Complaint contains no specifics with regard to what the advertisements contained, what the sales representative said to her when she was deciding to purchase the Gas Range, or what the vague "other" safety assurances regarding the knobs might have consisted of. (Volin does not allege, of course, that she cannot actually cook on the Gas Range.)

The only specific allegation of an express statement is that the owner's manual instructs the user to "Push the control knob in and turn it to the *LITE* position." (*Id.* ¶ 116) That statement, Volin argues, is misleading because the knob can also be engaged by a person jostling it.[2] (*Id.*) I am not persuaded that this statement in the owner's manual constitutes an express warranty that the Gas Range would be "free from defects in material and workmanship and fit for the ordinary purpose" of cooking safely. (Compl. ¶ 114) It is simply an instruction as to how to light the burner. Nor has Volin alleged factually that this statement was part of the basis for the bargain—*i.e.,* that she read or otherwise knew of it, and relied upon it in deciding to purchase the Gas Range.

Second, the Complaint alleges that GE expressly warranted in the owner's manual that it would provide all labor and in-home repair services to replace defective parts within one year of purchase. (*Id.* ¶ 117) The Complaint alleges that Volin contacted GE on September 4, 2013, regarding the perceived problems with the Gas Range. (*Id.* ¶ 44) The GE service representative who came to Volin's home on September 12, 2013, told her that nothing could be done. (*Id.* ¶ 45) Volin claims that GE breached its express limited warranty by

---

2   The burner could also presumably be lit with a match. That does not render the lighting instructions false.

refusing to repair the Gas Range or replace the defective parts. (*Id.* ¶ 120) That is sufficient, at the pleading stage, to state a claim.

GE protests that this warranty applies only to manufacturing defects, not design defects. At the pleading stage, however, "where the distinction between a defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives." *Alin v. Am. HondaMotor Co.*, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010). It is unclear what may have caused the alleged Surface Knob and Ignition System Defects; *a fortiori*, it is not clear whether (assuming they exist) they should be classified as design defects or defects in materials or workmanship. Such issues must await factual development.

The motion to dismiss is therefore denied as to Count III insofar as it alleges a breach of the express warranty that GE would provide all labor and in-home repair services to replace defective parts within one year of purchase.

### F. Magnuson-Moss Warranty Act (Count IV)

Count IV of the Complaint alleges that GE's failure to comply with its written and implied warranties violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq. The MMWA provides a private right of action in federal court for consumers who are "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation ... under a written warranty, [or] implied warranty." 15 U.S.C. § 2310(d)(1). An MMWA claim is coextensive with underlying state law warranty claims. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010). Thus, this claim will go forward to the extent that the breach of warranty claims remain viable. The motion to dismiss Count IV is denied.

### G. Unjust Enrichment (Count V)

Count V sounds in unjust enrichment. Under New Jersey law, to state a claim for unjust enrichment, "a plaintiff must allege that (1) at plaintiff's

expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Snyder*, 792 F. Supp. 2d at 723–24. At the pleading stage, a plaintiff "need only allege facts sufficient to show: 1) Plaintiff conferred a benefit on Defendant; and 2) circumstances are such that to deny recovery would be unjust." *Palmeri v. LG Electronics USA, Inc.*, Civ. No. 07–CV–5706, 2008 WL 2945985, *5 (D.N.J. July 30, 2008) (citing *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 285 (N.J. 1992)).

Count V of the Complaint alleges that GE has been unjustly enriched by retaining the $1,087 Volin paid for the allegedly defective Gas Range and that GE's retention of that money is unjust because Volin did not receive what she paid for.

I find that Volin has adequately pled a claim for unjust enrichment and I deny the motion to dismiss Count V.

**CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss the complaint is granted in part and denied in part. The motion to dismiss is granted as to Count III, to the extent it alleges a breach of an express warranty of fitness and that the goods would be free from the alleged safety defect, and as to Count VI. That dismissal is without prejudice to the filing of an Amended Complaint within thirty days. The motion to dismiss is otherwise denied. An appropriate Order follows.

Dated: May 27, 2016

*Kevin McNulty*
---
HON. KEVIN MCNULTY, U.S.D.J.